MICHAEL MATTHIAS (SBN 57728)
BLYTHE GOLAY (SBN 285389)
BAKER & HOSTETLER LLP
11601 Wilshire Boulevard, Suite 1400
Los Angeles, California 90025-0509
Telephone:   (310-820-8800)
Facsimile:   (310-820-8859)
Email:       mmatthias@bakerlaw.com
             bgolay@bakerlaw.com

Attorneys for Plaintiff
ROBERT NILSSON

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT NILSSON,<br><br>           Plaintiff,<br><br>     v.<br><br>FOX ORTEGA ENTERPRISES d/b/a PREMIER CRU, and DOES 1-10, inclusive,<br><br>           Defendant. | CASE NO.: 3:15-cv-04956<br><br>**COMPLAINT FOR:**<br><br>**1. FRAUDULENT MISREPRESENTATION**<br><br>**2. NEGLIGENT MISREPRESENTATION**<br><br>**3. BREACH OF CONTRACT**<br><br>**4. BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**<br><br>**5. RESCISSION BASED ON MISREPRESENTATION**<br><br>**6. VIOLATION OF CAL. BUS. & PROF. CODE § 17200**<br><br>**7. UNJUST ENRICHMENT**<br><br>**DEMAND FOR JURY TRIAL** |

## **INTRODUCTION**

1.      Defendant Fox Ortega Enterprises d/b/a Premier Cru ("Premier Cru") states on its website:  "We source the world's finest wines at extremely competitive prices to provide exceptional experiences for collectors, connoisseurs, and everyday wine lovers."  That has not

2
COMPLAINT
607501885.4

been true for Plaintiff Robert Nilsson ("Nilsson") and, apparently, many other Premier Cru customers. This case is about Premier Cru's failure to provide the wine that Nilsson paid for, failure to provide the refunds requested, and general failure to fulfill its obligations and related misleading and fraudulent conduct. As a result of its wrongful conduct, Premier Cru has had the benefit of holding more than $400,000 of Nilsson's money for, in some instances, more than two years.

## PARTIES

2. Nilsson is an individual residing in Switzerland, with his primary residence and citizenship in Sweden.

3. Premier Cru is a California corporation with its principal place of business in Berkeley, California.

4. Nilsson is ignorant of the true names and capacities of defendants sued herein as Does 1-10, inclusive, and therefore sues these defendants by such fictitious names. Nilsson will amend this complaint to allege their true names and capacities when ascertained. Nilsson is informed and believes and thereon alleges that each of such fictitiously named defendants is responsible in some manner or status for the acts and omissions described herein and that his loss as herein alleged was proximately caused by defendants' acts.

## JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT

5. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) because Nilsson is a citizen of Sweden and Premier Cru is incorporated in California, and the amount in controversy exceeds $75,000.

6. Venue is proper in this district because a substantial part of the acts and omissions giving rise to this case took place in Berkeley, California.

7. Intradistrict assignment is proper in the San Francisco or Oakland Division of this Court pursuant to Civil Local Rule 3-2(d) because a substantial part of the events or omissions giving rise to this case occurred in Berkeley, California, which is located in Alameda County.

## FACTUAL ALLEGATIONS

8. Between February 2013 and May 2015, Nilsson purchased more than 1,000 bottles of wine from Premier Cru.

9. Nilsson purchased wine from Premier Cru because Premier Cru holds itself out as a reputable dealer of wine and wine futures with secure relationships with chateaus. Premier Cru describes itself on its website (www.premiercru.net) as selling "The World's Finest Wines."

10. Based on purchase records on Premier Cru's website, Nilsson ordered approximately 1,852 bottles of wine from Premier Cru between February 2013 and May 2015.

11. At the time of each order, Nilsson paid in full for the wine ordered at that time.

12. Nilsson has fully paid for all of the bottles he has ordered from Premier Cru, and Premier Cru has accepted payment in full for all such bottles.

13. As of the date of filing this Complaint, Premier Cru has failed to deliver bottles ordered by Nilsson in 2013.

14. As of the date of filing this Complaint, Premier Cru has failed to deliver bottles ordered by Nilsson in 2014.

15. As of the date of filing this Complaint, Premier Cru has failed to deliver bottles ordered by Nilsson in 2015.

16. As of the date of filing this Complaint, Premier Cru has failed to deliver the majority of the bottles of wine ordered by Nilsson.

17. As of the date of filing this Complaint, based on records on Premier Cru's website, Premier Cru has delivered only approximately 290 bottles to Nilsson.

18. As of the date of filing this Complaint, Premier Cru has failed to deliver approximately 1,562 bottles of wine ordered by Nilsson.

19. As of the date of this Complaint, Nilsson has paid Premier Cru approximately $484,553.19 for wine that Premier Cru has not delivered to Nilsson.

20. Premier Cru's website provides that customers may cancel orders and obtain a refund.

COMPLAINT

607501885.4

21. Nilsson relied upon the representations in Premier Cru's website that customers may cancel orders and obtain a refund.

22. In a series of correspondence between Nilsson and Premier Cru that began on approximately May 27, 2015, Nilsson began to inquire about obtaining a refund for all undelivered bottles.

23. In correspondence to Premier Cru in June, July, and August 2015, Nilsson requested a refund for all undelivered bottles.

24. In correspondence to Nilsson in June, July, and August 2015, Premier Cru agreed to provide Nilsson with a refund for all undelivered bottles.

25. Premier Cru agreed to refund more than $400,000 to Nilsson.

26. Premier Cru offered to refund Nilsson's money in three installments over 90 days, beginning in July 2015 and, in response, Nilsson agreed to allow Premier Cru to provide the refund under these terms and in that 90-day period.

27. Premier Cru failed to refund any of Nilsson's balance in July 2015.

28. Premier Cru failed to refund any of Nilsson's balance in August 2015.

29. Premier Cru failed to refund any of Nilsson's balance in September 2015.

30. As of the date of filing this Complaint, Premier Cru has failed to refund any of Nilsson's balance.

31. Premier Cru failed to make any of the three installment refund payments that it agreed to make beginning in July 2015.

32. Nilsson made repeated inquiries in July and August 2015 as to the status of his refund.

33. On or about August 15, 2015, Nilsson advised Premier Cru that if he did not receive a full refund in the next two weeks, he would contact his lawyer.

34. Premier Cru did not respond to Nilsson's August 15, 2015 correspondence and has failed to refund Nilsson's money.

35. A summary of Nilsson's Order history, through October 1, 2015, is attached as Exhibit A.

36. A summary of Shipment Details, through October 1, 2015, is attached as Exhibit B.

37. The undelivered wine that Nilsson purchased and that Premier Cru has failed to deliver dates back to February 2013 and includes unfulfilled purchases made between February 2013 and May 2015.

38. Under California Commercial Code section 2309(1), "the time for shipment or delivery or any other action under a contract if not provided in this division or agreed upon shall be a reasonable time."

39. Some of the wines that Nilsson ordered from Premier Cru but that Premier Cru has failed to deliver are available and can be ordered from other vendors. Nonetheless, despite Nilsson having paid for these wines, Premier Cru has continued to fail to deliver the wines or refund the purchase price.

40. Nilsson has requested rescission of his purchase contracts with Premier Cru and an unconditional return of his money. Premier Cru has failed to comply and has ignored his most recent requests, providing no response at all.

41. Had Nilsson known that Premier Cru would not fulfill his wine orders within a reasonable amount of time, he would not have sent Premier Cru his money.

42. Had Nilsson known that Premier Cru would not fulfill his wine orders within a reasonable amount of time, he would have availed himself of other uses of that money, rather than keeping it in the hands of Premier Cru.

43. Nilsson's experience is not unique. A Google search yields multiple complaints by other purchasers of Premier Cru's futures who have not received the goods they bargained for.

44. Several of those complaints are summarized in the New York Times article entitled "No Wine (Really, Not One Bottle) Before Its Time," dated June 6, 2015, available at <http://www.nytimes.com/2015/06/07/your-money/no-wine-really-not-one-bottle-before-its-time.html>. In that article, John Fox, a principal of Premier Cru, is quoted as follows: "We've been working on getting our staff to give people correct information about when their wine is going to show up…. *Not false estimates because they want to get off the phone. It's been a*

*transition.*" (emphasis added).

45. Mr. Fox's statement suggests that Premier Cru's staff has had a practice of giving false information and that it was not until June 2015, after Nilsson had ordered approximately 1,852 bottles of wine from Premier Cru, that Premier Cru was trying to transition away from its deceptive practices.

## **FIRST CLAIM FOR RELIEF**

### **(Fraudulent Misrepresentation)**

46. All previous paragraphs are incorporated herein by reference.

47. Each time Nilsson purchased wine or wine futures from Premier Cru (i.e. with each order as summarized in Exhibit A), Premier Cru made a promise that it would timely deliver Nilsson's wine to him. These statements were false.

48. Premier Cru's website also contains statements that it in fact delivers the wine that is ordered. These statements were false.

49. On information and belief, at the time Premier Cru made each representation, it knew the representation was false, or it made the representation recklessly and without regard for its truth, because Premier Cru had no intention of performing it, and it knew that it could not or would not timely deliver Nilsson's wine to him.

50. John Fox's admissions in the New York Times that "[w]e've been working on getting our staff to give people correct information about when their wine is going to show up…. Not false estimates because they want to get off the phone. It's been a transition…." suggests that Premier Cru's staff is "transitioning" from giving "false estimates"—such as the false estimates given to Nilsson.

51. Premier Cru's statements were made with the intention of inducing customers, including Nilsson, to pay Premier Cru large sums of money for wine, most of which has never been delivered.

52. Nilsson, at the time the promises were made and at the time he sent money to Premier Cru, was ignorant of the defendant's secret intention not to perform and could not, in exercising reasonable diligence, determine that Premier Cru had no intention to perform. Nilsson

6

COMPLAINT

607501885.4

lives overseas and communicated with Premier Cru by email.

53. Beginning in June 2015, Nilsson requested a refund of his purchases for undelivered wine. In communications throughout June and July 2015, Premier Cru assured Nilsson that it would be sending his refund. Premier Cru assured Nilsson that it was processing his refund and that the refund would be provided. Premier Cru's assurances in emails to Nilsson and on its website that customers (including, in particular, Nilsson) will, upon request, receive refunds on undelivered bottles were false. No refund was ever sent. If Nilsson had known Premier Cru's actual intentions, he would never have sent Premier Cru money.

54. Premier Cru failed to abide by its promise to deliver Nilsson's wine.

55. Premier Cru failed to abide by its promise to deliver Nilsson's refund.

56. As a direct and proximate result of these false promises, Nilsson has been damaged in an amount no less than $484,553.19.

57. Premier Cru's promises with no intention to perform were intentional misrepresentations and deceits, with the intention of depriving Nilsson of property or legal rights or otherwise causing injury, and were despicable conduct that subjected the Nilsson to a cruel and unjust hardship in conscious disregard of his rights, so as to justify an award of exemplary and punitive damages.

## SECOND CLAIM FOR RELIEF

### (Negligent Misrepresentation)

58. Nilsson alleges the following in the alternative to the First Claim for Relief.

59. All previous paragraphs are incorporated herein by reference.

60. In the alternative, if Premier Cru's statements as to its intent to deliver wine and its statements as to its intent to deliver Nilsson's refund were not deliberately false, they were nonetheless negligent misrepresentations, made without sufficient knowledge or belief that such statements were true, and made with the intent that Nilsson would rely on such statements.

61. Nilsson reasonably relied on these false statements.

62. Nilsson sent money to Premier Cru in reliance on its representations that wine purchased would be delivered within a reasonable time after purchase.

63. Nilsson refrained from seeking a refund earlier in reliance on the same representations.

64. Nilsson further refrained from taking legal action earlier in reliance on Premier Cru's statements that it would provide him the refund as he requested.

65. At the time the statements were made and at the time he sent money to Premier Cru, Nilsson was ignorant of the falsity of these representations and could not, in exercising reasonable diligence, determine that these statements were false. If Nilsson had known that Premier Cru was making false representations about when his wine would be available, he would never have sent Premier Cru money.

66. As a direct and proximate result of these false promises, Nilsson has been damaged in an amount no less than $484,553.19.

## THIRD CLAIM FOR RELIEF

### (Breach of Contract)

67. All previous paragraphs are incorporated herein by reference.

68. Each time Nilsson purchased wine or wine futures from Premier Cru (i.e. with each separate order, as summarized in Exhibit A), Premier Cru made a promise that it could and would deliver Nilsson's wine to him within a reasonable time.

69. Nilsson has performed all conditions, covenants, and promises required on his part to be performed in accordance with the terms and conditions of the contracts or has been excused from such performance.

70. With respect to approximately 1,562 bottles of wine that Nilsson ordered from Premier Cru between February 2013 and May 2015 and that were never delivered to Nilsson, Premier Cru breached each purchase contract by failing to deliver Nilsson's wine within a reasonable time and failing to refund the money paid by Nilsson to Premier Cru for the undelivered wine.

71. As a direct and proximate result of Premier Cru's breaches, Nilsson has been damaged in an amount no less than $484,553.19.

## FOURTH CLAIM FOR RELIEF

### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

72. All previous paragraphs are incorporated herein by reference.

73. Implicit in each purchase order (as summarized in Exhibit A) was Premier Cru's duty to act in good faith vis-à-vis Nilsson and to treat him fairly. Pursuant to the implied covenant of good faith and fair dealing, Premier Cru promised that it would not do anything to unfairly interfere with the right of Nilsson to receive the benefits under the purchase orders.

74. Nilsson has fully complied with the terms of the purchase orders by performing all conditions, covenants, and promises required of him, and specifically, by fully paying for all of the bottles he has ordered from Premier Cru.

75. Premier Cru has repeatedly failed in its duty to act fairly and in good faith by unfairly interfering with Nilsson's right to receive the benefits under the purchase orders. Premier Cru has repeatedly acted in a fashion so as to assure that Nilsson's wine would not be timely delivered and that Nilsson would not receive the benefits he is entitled to receive under the purchase order agreements. Premier Cru has thereby breached the implied covenant of good faith and fair dealing.

76. As a direct and proximate result of the foregoing material breaches of the implied covenant of good faith and fair dealing, Nilsson has been damaged in an amount no less than $484,553.19.

## FIFTH CLAIM FOR RELIEF

### (Rescission Based on Misrepresentation [Cal. Civ. Code § 1689(b)(2)])

77. Plaintiff alleges the following in the alternative to the Third Claim for Relief.

78. All previous paragraphs are incorporated herein by reference.

79. Premier Cru made the misrepresentations to Nilsson set forth in the foregoing paragraphs.

80. When Premier Cru made the above-described false statements to Nilsson, Premier Cru knew the statements to be false and made these statements with the intent of inducing Nilsson to order wine through Premier Cru, to send Premier Cru money, and/or to forbear from taking

action against Premier Cru.

81. Nilsson reasonably relied on these false statements. At the time the promises were made and at the time he sent money to Premier Cru, Nilsson was ignorant of the falsity of these representations and could not, in exercising reasonable diligence, determine that these statements were false. If Nilsson had known that Premier Cru was making false representations about when his wine would be available, he would never have sent Premier Cru money.

82. With the service of this Complaint, Nilsson hereby demands rescission of the sale of the approximately 1,852 bottles of wine from Premier Cru, and actual, incidental, and consequential damages.

### SIXTH CLAIM FOR RELIEF

### (Unfair Business Practices [Cal. Bus. & Prof. Code § 17200 *et seq.*])

83. All previous paragraphs are incorporated herein by reference.

84. Section 17200 of the California Business and Professions Code prohibits "unfair competition," which includes "unfair" and "fraudulent" business acts or practices.

85. Premier Cru's business practices, as alleged herein, are unfair because: (1) the injury to the consumer is substantial; (2) the injury is not outweighed by any countervailing benefits to consumers or competition; and (3) consumers could not reasonably have avoided the information because Premier Cru intentionally mislead the consuming public by means of the claims made with respect to delivering the wine as set forth herein. Reasonable consumers would be and have been mislead and deceived by Premier Cru about its intent and ability to deliver wine ordered from it within a reasonable amount of time, and Premier Cru's promise to deliver refunds.

86. Premier Cru's business practices are fraudulent because they are likely to deceive members of the public. As set forth above, Premier Cru has and had a business practice of representing that it can and will secure wine for its customers when it lacks the intention and/or the ability to do so. Accordingly, Premier Cru's representations are false.

87. As set forth above, Nilsson was induced to order wine from Premier Cru and to refrain from action against it by Premier Cru's false promises and representations regarding its ability to deliver wine to him and, later, its false promises and representations that it would refund

his money.  These representations were material to Nilsson and he would not have given money to Premier Cru without them.  Premier Cru's acts and practices were false, misleading, deceptive, and unfair to consumers, in violation of the California Unfair Competition Law.

88.  These representations caused Nilsson to suffer harm in that he sent money to Premier Cru to secure wines that Premier Cru had no intention of delivering to him.

89.  Nilsson demands restitution, injunctive relief, and all other relief available under Bus. & Prof. Code § 17200 et seq.

## SEVENTH CLAIM FOR RELIEF

### (Unjust Enrichment)

90.  All previous paragraphs are incorporated herein by reference.

91.  Nilsson has conferred substantial benefits on Premier Cru by purchasing approximately 1,562 bottles of wine between February 2013 and May 2015 which were never delivered to Nilsson.  Premier Cru has consciously and willingly accepted and enjoyed these benefits.

92.  Premier Cru knew or should have known that consumers' payments (including Nilsson's payments) to Premier Cru were given and received with the expectation that consumers would actually receive the wine or that consumers could seek a refund.

93.  Because of the deliberate fraudulent misrepresentations, concealments, and other wrongful activities described herein, including but not limited to, Premier Cru's statements that it in fact delivers wine that is ordered and that customers will receive refunds upon request of undelivered bottles, Premier Cru has been unjustly enriched by its wrongful receipt of Nilsson's monies.

94.  Premier Cru has received a significant benefit to the detriment of Nilsson.  Premier Cru's retention of the benefits and monies conferred upon it at the expense of Nilsson through Premier Cru's fraudulent and tortious conduct would wrongfully and unjustly enrich Premier Cru—allowing it to retain the benefit of its fraudulent conduct, especially in light of the substantial harm caused to Nilsson as a result of this misconduct.

95.     As a direct and proximate result of Premier Cru's wrongful conduct and unjust enrichment, Nilsson has been damaged in an amount no less than $484,553.19.

96.     Premier Cru should be required to account for and disgorge all monies, profits, and gains which it has obtained at the expense of Nilsson.

### **PRAYER**

WHEREFORE, Nilsson prays for judgment as follows:

1.      For general, special, and compensatory damages in an amount to be proven at trial;

2.      For consequential damages in an amount to be proven at trial;

3.      For prejudgment interest as provided by law;

4.      For punitive damages in amount appropriate to punish Premier Cru and deter others from engaging in similar misconduct;

5.      For restitution;

6.      For preliminary and permanent injunctive relief;

7.      For attorney's fees and costs of suit; and

8.      For any further relief which the Court deems just and proper.

Dated: October 28, 2015                          BAKER & HOSTETLER LLP


By:    */s/ Michael R. Matthias*
              Michael R. Matthias

Attorneys for Plaintiff
ROBERT NILSSON

## DEMAND FOR JURY TRIAL

In accordance with Rule 38(b) of the Federal Rules of Civil Procedure, Nilsson hereby demands a trial by jury on all issues triable by a jury.

Dated: October 28, 2015  BAKER & HOSTETLER LLP

By: */s/ Michael R. Matthias*
     Michael R. Matthias

Attorneys for Plaintiff
ROBERT NILSSON